UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAMUEL CARL NEYHART,<br><br>　　　　　　　　Petitioner,<br><br>　v.<br><br>TYRELL DAVIS, Warden,[1]<br><br>　　　　　　　　Respondent. | Case No. 1:20-cv-00432-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Samuel Carl Neyhart ("Petitioner"), challenging Petitioner's state court convictions. *See* Dkt. 1. Respondent has filed a Motion for Partial Summary Dismissal, arguing that Claim 2(a) is not cognizable—meaning it cannot be heard—on federal habeas review and that Claim 4, Claim 5, and most of Claim 3 are procedurally defaulted without legal excuse. *See* Dkt. 19. The Motion is now ripe for adjudication.

　　　　The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *See* Dkt. Nos. 18, 26; Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

　　　　The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal

---

[1] Respondent Tyrell Davis is substituted for his predecessor, Al Ramirez, as Warden of the Idaho State Correctional Institution. *See* Fed. R. Civ. P. 25(d); Dkt. 33.

Rule of Civil Procedure 73. *See* Dkt. 5. Having carefully reviewed the record, including the state court record, the Court finds that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting in part Respondent's Motion and dismissing with prejudice Claim 3 (with the exception of Claim 3(c)), Claim 4, and Claim 5.

Claim 2(a) is cognizable in this habeas corpus case, but it appears to be procedurally defaulted, just as the other claims subject to Respondent's motion. Because Respondent did not move for summary dismissal of Claim 2(a) on that basis, the Court will permit Plaintiff to file a response to this Order, within 21 days, addressing the Court's analysis with respect to Claim 2(a).

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Neyhart*, 378 P.3d 1045, 1048 (Idaho Ct. App. 2016). The facts will not be repeated here except as necessary to explain the Court's decision.

In 2014, following a jury trial in the Fifth Judicial District Court in Twin Falls County, Idaho, Petitioner was convicted of three counts of lewd conduct with a minor under the age of sixteen. *Id*. at 1047. He received three concurrent life sentences with 10 years fixed. *Id*. at 1049.

On direct appeal, Petitioner asserted the following claims: (1) there was insufficient evidence to support the convictions; (2) the prosecutor committed misconduct by commenting on Petitioner's silence; (3) the trial court improperly permitted the prosecutor to impeach Petitioner with a hearsay document (a pharmacy record), in

MEMORANDUM DECISION AND ORDER - 2

violation of Idaho state law; and (4) the prosecutor committed misconduct by using that document. *State's Lodging B-2*. The Idaho Court of Appeals affirmed the convictions in a published opinion. *Neyhart*, 378 P.3d 1045. The Idaho Supreme Court denied review, as did the United States Supreme Court. *State's Lodging B-8, B-10*.

Petitioner filed a pro se state post-conviction petition. *State's Lodging C-1* at 1–165. Petitioner later filed an amended petition, through counsel, that asserted various claims of ineffective assistance of counsel and prosecutorial misconduct; Petitioner also alleged that there was new evidence about the termination of the employment of Detective Becky White. *Id*. at 371–77. The state district court ordered an evidentiary hearing on four of Petitioner's ineffective assistance claims. The court did not expressly address the other claims in the petition, noting that the previous judge in the case had narrowed the issues at a hearing on the state's motion for summary dismissal. *State's Lodging C-1* at 441–44. After the evidentiary hearing, the court denied post-conviction relief. *Id*. at 458–59, 461–71, 495–96; *see also State's Lodging C-4* (transcript of evidentiary hearing).

Petitioner appealed the denial of his post-conviction petition, asserting that the state district court erred by not setting two of Petitioner's claims of ineffective assistance of trial counsel for evidentiary hearing—(1) that counsel "fail[ed] to move to suppress any mention" of Petitioner's silence after arrest, *Miranda* warnings, and Petitioner's assertion of his right to counsel; and (2) that counsel "fail[ed] to make hearsay and confrontation clause objections." *State's Lodging D-1* at 6. Petitioner also challenged the denial on the merits of Petitioner's claim that counsel was ineffective for failing to file a

MEMORANDUM DECISION AND ORDER - 3

timely motion to admit evidence of the victim's sexual history, pursuant to Rule 412 of the Idaho Rules of Evidence. *Id*. at 19. The Idaho Court of Appeals affirmed the denial of the post-conviction petition, and the Idaho Supreme Court denied review. *State's Lodging D-4, D-7*.

Petitioner next filed a successive state post-conviction petition asserting various claims regarding the victim's colposcopy and discovery of a skin condition, including a claim that the prosecutor failed to disclose this evidence. *State's Lodging E-1* at 5–43, 55–69. The state district court dismissed the petition, because (1) the claims could have been raised on direct appeal or in the initial post-conviction proceedings, and (2) Petitioner's *Brady*[2] claims failed on the merits. *Id*. at 109–20.

Petitioner appealed the dismissal of the successive post-conviction petition. The Idaho Court of Appeals affirmed, concluding that the claims were procedurally barred because they could have been raised in previous proceedings. *State's Lodging F-4*. The Idaho Supreme Court denied review.

In the instant federal habeas corpus petition, Petitioner asserts the following claims:

Claim 1:   The prosecutor violated the Fifth Amendment, during cross-examination and during closing argument, by commenting on Petitioner's silence. Petitioner divides this claim into three subparts, based on Petitioner's (a) post-*Miranda*,[3] post-arrest, post-invocation

---

[2] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution must disclose all material evidence that is favorable to the defense).

[3] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.").

silence; (b) post-*Miranda*, pre-arrest, post-invocation silence; and (c) pre-*Miranda*, pre-arrest, post-invocation silence.

Claim 2:      Petitioner was deprived of his Sixth and Fourteenth Amendments rights in the following ways: (a) the trial court violated the Confrontation Clause and the right to a fair trial by allowing the prosecutor to impeach Petitioner with an inadmissible hearsay document for which there was no foundation; and (b) the prosecutor committed misconduct by misrepresenting the document at trial and failing to take action to correct this misrepresentation.[4]

Claim 3:      Petitioner's trial counsel was ineffective based on counsel's (a) failure to file a motion to suppress Petitioner's statements on Fifth Amendment grounds; (b) failure to raise a Confrontation Clause objection to Detective White's statements made during a 2010 interview; (c) failure to file a timely notice for the admission of the victim's prior sexual conduct under Rule 412 of the Idaho Rules of Evidence; (d) failure to move for a mistrial after the prosecutor goaded petitioner's wife into disrobing in front of the jury; (e) failure to timely investigate or prepare for trial in that counsel failed to: (i) file a timely Rule 412 motion; (ii) subpoena or obtain health and welfare documents before trial; (iii) file any motions prior to trial; (iv) make arrangements to view certain digital photos until a week before trial or to facilitate Petitioner's viewing of those photos; (v) disclose Walmart pharmacy records confirming that Petitioner took Cymbalta in 2010; (vi) correct errors and misrepresentation with respect to State's Exhibit 23; (vii) file a motion for to continue or motion in limine when the state disclosed new evidence a week before trial; (viii) file a motion to continue or a motion in limine after the state disclosed exculpatory information regarding Detective White; (ix) research or hire an expert witness to investigate or explain the medical findings of Dr. Reese that the victim had lichen sclerosis; and (x) admit defense exhibits; and (f) failure to withdraw from the case after a breakdown in the attorney-client relationship over Petitioner's indigency.

Claim 4:      The prosecutor committed misconduct by (a) lying to defense counsel and the court to deliberately conceal evidence; (b) presenting false or misleading expert witness testimony;

---

[4] Petitioner separates Claim 2 into three subparts: 2(a), 2(b), and 2(c). However, because Claims 2(b) and 2(c) assert the same constitutional violations based on the same set of facts, the Court will consider them together as Claim 2(b).

(c) presenting false expert witness testimony that lichen sclerosis is a normal finding rather than a serious medical condition; and
(d) misrepresenting testimony during closing argument.

Claim 5:   The state committed *Brady* violations in failing to disclose: (a) specified items listed in discovery to which the state refused access; (b) information that Detective White was fired for lying on her timecard; (c) contact information for Detectives White and Duche; (d) certain photos introduced at trial; and (e) that the victim had a medical condition that caused vaginal redness.

*See generally Pet.*, Dkt. 1.

The Court previously reviewed the Petition and allowed Petitioner to proceed on his claims to the extent those claims "(1) are cognizable in a federal habeas corpus action, (2) were timely filed in this Court, and (3) were either properly exhausted in state court or subject to a legal excuse for any failure to exhaust in a proper manner." *Initial Review Order*, Dkt. 6, at 2.

## DISCUSSION

For the following reasons, the Court agrees with Respondent that Claims 3 (except for sub-claim 3(c)), 4, and 5 are procedurally defaulted without excuse. These claims will be dismissed with prejudice.

The Court disagrees with Respondent as to Claim 2(a) and concludes that the claim is cognizable. It appears, however, to be procedurally defaulted, just like the other claims subject to Respondent's motion.

## 1.    Standard of Law Governing Summary Dismissal

The Rules Governing § 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the

face of the petition and any attached exhibits," as well as those records subject to judicial

notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4.

Where appropriate, as here, a respondent may file a motion for summary dismissal, rather

than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

**2.      Claim 3 (except Claim 3(c)), Claim 4, and Claim 5 Are Procedurally
         Defaulted, and Petitioner Has Not Established as Excuse for the Default**

> ### A.      *Procedural Default Standards of Law*

A habeas petitioner must exhaust his or her remedies in the state courts before a

federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S.

838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's

established appellate review process, fairly presenting all constitutional claims to the state

courts so that they have a full and fair opportunity to correct alleged constitutional errors

at each level of appellate review. *Id.* at 845. In a state that has the possibility of

discretionary review in the highest appellate court, like Idaho, the petitioner must have

presented all of his federal claims at least in a petition seeking review before that court.

*Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts

and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518

U.S. 152, 162–63 (1996).

The mere similarity between a federal claim and a state law claim, without more,

does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364,

365-66 (1995) (per curiam). General references in state court to "broad constitutional

principles, such as due process, equal protection, [or] the right to a fair trial," are likewise

insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include the following: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard . . .

is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

MEMORANDUM DECISION AND ORDER - 9

### B.   Claims 3(a), 3(b), 3(d) through 3(f), 4, and 5 are Procedurally Defaulted

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings and compare them to the subject matter of the claims asserted in this action.

i.   Direct Appeal

On direct appeal, Petitioner argued insufficient evidence, a claim which he does not raise in the Petition. *State's Lodging B-2* at 7–11. Petitioner also asserted two claims of prosecutorial misconduct—that the prosecutor violated the Fifth Amendment by improperly commenting on Petitioner's silence and by using an inadmissible hearsay document to impeach Petitioner. *Id*. at 11–19, 22–25. These two claims correspond to Claims 1 and 2(b) of the Petition.

Finally, Petitioner argued on direct appeal that the trial court erred, under Idaho law, by permitting the prosecution to impeach Petitioner with the hearsay document. *Id*. at 19–22. This trial-court error claim is similar to, but not the same as, Claim 2(a).[5] However, Petitioner did not raise Claim 2(a) or any portion of Claim 3 (ineffective assistance of counsel), Claim 4 (other allegations of prosecutorial misconduct), or Claim 5 (*Brady* violations) on direct appeal. *State's Lodging B-2*. Thus, on direct appeal, only Claims 1 and 2(b) were fairly presented to the state courts.

---

[5] The Court will discuss the procedural default issue with respect to Claim 2(a) in Section 3, below.

ii.      Initial Post-Conviction Appeal

On appeal from the denial of his initial post-conviction petition, Petitioner raised

Claim 3(c)—that trial counsel should have filed a timely motion for introduction of prior

sexual acts evidence under Idaho Rule of Evidence 412. Petitioner also argued that the

trial court should have set two additional ineffective assistance claims for an evidentiary

hearing rather than summarily dismissing them—claims which correspond to Claims 3(a)

and 3(b) of the federal Petition. *State's Lodging D-1.*

The state appellate court denied Claim 3(c) on the merits. *State's Lodging D-4* at

6–9. However, it declined to address Claim 3(a) or 3(b) because Petitioner failed, in the

state district court, to obtain an adverse ruling and thereby did not preserve those claims.

*Id.* at 3.

Idaho appellate courts have long held that if a state district court does not address

all of a petitioner's claims, the petitioner must bring that failure to the district court's

attention. *See, e.g., State v. Huntsman*, 199 P.3d 155, 160 (2008). By failing to do so,

Petitioner forfeited Claims 3(a) and 3(b) by operation of Idaho law. Respondent has

shown that this procedural rule is adequate and independent, and Petitioner has not

rebutted that showing. Therefore, Claims 3(a) and 3(b) were not fairly presented to the

state courts and are procedurally defaulted.

In the initial post-conviction appeal, Petitioner did not raise any other ineffective

assistance claim that he presently asserts in Claim 3, nor did he raise the *Brady* claims or

prosecutorial misconduct claims he sets forth in Claims 4 and 5. *See State's Lodging D-1.*

Thus, these claims were not fairly presented to the Idaho appellate courts in that appeal.

Because Claim 3(c) was denied on the merits, however, that claim is not procedurally defaulted and is not subject to Respondent's Motion.

              iii.       <u>Successive Post-Conviction Appeal</u>

The only other state court appeal in this case was Petitioner's appeal from the dismissal of his successive post-conviction petition. In that appeal, Petitioner raised claims of prosecutorial misconduct, *Brady* Claims, and an ineffective assistance claim that appears to correspond to Claim 3(e)(ix) (regarding the victim's lichen sclerosis). *State's Lodging F-1; F-4*. However, relying on Idaho Code §§ 19-4901 and 19-4908, the Idaho Court of Appeals held that the claims were procedurally barred and declined to address them. *State's Lodging F-4*.

Section 19-4901 prohibits a petitioner from raising claims in a post-conviction petition if those claims could have been raised on direct appeal, unless the claims "could not, in the exercise of due diligence, have been presented earlier." Section 19-4908 operates in a similar manner by prohibiting any successive post-conviction claims that were not raised in the initial post-conviction petition, unless the petitioner shows a "sufficient reason" why the claims were not asserted earlier.

Respondent has met its burden of showing that these procedural rules are not dependent on federal law and were "clear, consistently applied, and well-established" at the time of Petitioner's default. *Klauser*, 266 F.3d at 1093 (internal quotation marks

omitted). Petitioner has not convinced the Court otherwise.[6] Therefore, Petitioner did not fairly present any of his current habeas claims in his successive post-conviction appeal.

    iv.       Petitioner's Supplemental Pro Se Motions

Petitioner claims that he did, in fact, fairly present other claims on direct appeal after the Idaho Court of Appeals issued its decision. Petitioner moved to file a supplemental pro se brief, in addition to direct appeal counsel's brief, in support of his petition for review. *See State's Lodging B-11*. Petitioner also claims he fairly presented other claims in his initial post-conviction appeal, after counsel had submitted the opening brief, by asking for leave to file a supplemental pro se brief. *See State's Lodging D-9*. The Idaho Supreme Court denied Petitioner's requests in both cases. *State's Lodging B-12; D-12*.

There are some circumstances where a pro se motion filed by a represented litigant may constitute fair presentation of a claim raised in the motion. In *Clemmons v. Delo*, the Eighth Circuit held that a claim was fairly presented to the state court, even though counsel failed to raise the claim in appellate briefing, because the petitioner "did the only thing he could do: he tried to bring the issue to the attention of the [court] himself" by filing a motion pro se. 124 F.3d 944, 948 (8th Cir. 1997).

However, the principle of fair presentation discussed in *Clemmons* does not apply where the state court has a "regularly applied rule of state procedural law" that bars

---

[6] Further, this Court already has determined that §§ 19-4901 and 19-4908 are adequate and independent state procedural grounds. *See, e.g., Sheahan v. Valdez*, No. 1:09-cv-00191, 2010 WL 3893934, at *3 (D. Idaho Sept. 27, 2010) (unpublished); *Nelson v. Blades*, No. CV 04-001-S-LMB, 2009 WL 790172, at *10 (D. Idaho Mar. 23, 2009) (unpublished).

MEMORANDUM DECISION AND ORDER - 13

represented litigants from filing pro se documents independently of counsel. *Id.* at 956; *see Oglesby v. Bowersox*, 592 F.3d 922, 925 (8th Cir. 2010) (holding that the *Clemmons* principle, though applicable in certain "unique circumstances," does not apply if the petitioner's "claim was defaulted pursuant to an independent and adequate state procedural rule that is firmly established and regularly followed"). Idaho courts have a consistent and longstanding practice of refusing to consider pro se filings when the filing party is represented by counsel. *See, e.g., Moen v. State*, No. 40600, 2014 WL 5305905, at *11 (Idaho Ct. App. Oct. 15, 2014); *Johnson v. State*, No. 38425, 2012 WL 9490829, at *2 (Idaho Ct. App. Feb. 3, 2012); *Musgrove v. State*, Case No. 37407, 2011 WL 11037672, at *1 (Idaho Ct. App. May 16, 2011); *State v. Brink*, Case No. 34391, 2008 WL 9471256, at *8 (Idaho Ct. App. Nov. 7, 2008).

Appellants in criminal and post-conviction cases in Idaho have two clear, mutually-exclusive choices—either they choose to be represented by counsel, or they choose to ask counsel to withdraw so they can proceed pro se. A petitioner cannot have it both ways. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (holding that the Sixth Amendment does not entitle a criminal defendant to "hybrid" representation—that is, a defendant does not have the right to represent himself *and* to have the assistance of counsel). The Idaho courts are entitled to create rules that aid them in the orderly administration of cases, and this is one such rule. Therefore, the *Clemmons* principle does not apply in this case to render properly exhausted the claims Petitioner raised in his motions to file pro se briefing in the Idaho appellate courts.

MEMORANDUM DECISION AND ORDER - 14

v.      Procedural Default Conclusion

For the foregoing reasons, Claim 3 (except Claim 3(c)), all of Claim 4, and all of Claim 5 are procedurally defaulted. However, that conclusion does not end the inquiry. If a petitioner's claim is procedurally defaulted, a federal district court still can hear the merits of the claim, but only if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence. *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

### C.      *Petitioner Has Not Established Cause and Prejudice to Excuse the Procedural Default*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of counsel ("IAC") may constitute cause for a default. For example, counsel's failure on appeal to raise a meritorious claim of trial error—or a failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for

review in state court will suffice."). However, for IAC—whether at trial or on direct appeal—to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance ... generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted).

In other words, before a federal court can consider ineffective assistance of trial or direct appeal counsel as cause to excuse the default of an underlying habeas claim, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, through the level of the Idaho Supreme Court. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show an excuse for that separate default, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Therefore, the general rule is that any errors of counsel during a post-conviction action cannot serve as cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances,

MEMORANDUM DECISION AND ORDER - 16

"[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. *Martinez* does not apply to any claims other than trial-counsel ineffectiveness claims, and it can apply only if the underlying IAC claim is both exhausted and procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*).

The *Martinez* cause-and-prejudice test consists of four necessary prongs: (1) the underlying IAC claim must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the IAC claim could have been brought[7]; and (4) state law requires that an IAC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013).

To show that a claim is "substantial" under *Martinez*, a petitioner must point to evidence demonstrating that the underlying ineffectiveness claim has "some merit." *Martinez*, 556 U.S. at 14. That is, the petitioner must submit at least *some* evidence

---

[7] The *Martinez* exception applies only to claims that were defaulted in the initial-review collateral proceeding—a petitioner may not use, as cause to excuse a default, any attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16.

tending to show (a) that trial counsel performed deficiently in handling some aspect of pretrial or trial duties and (b) that the deficient performance prejudiced the defense, which is defined as a reasonable probability of a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

Even if an underlying claim is substantial under *Martinez*, a petitioner must also show that ineffective assistance of post-conviction counsel in the initial-review collateral proceedings caused the default of that claim. This requires a showing not just that the claim was omitted or not fully pursued in the initial post-conviction action, but also that the post-conviction attorney in the initial post-conviction matter was constitutionally ineffective—meaning that (1) post-conviction counsel performed deficiently in failing to raise or to fully pursue the claim, and (2) there is a reasonable probability that, absent the deficient performance, the petitioner would have prevailed in the post-conviction proceeding. *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016); *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc).

Petitioner does not make a *Martinez* argument as to any specific claim, but he does assert that counsel at all stages was ineffective and sets forth examples of counsel's alleged mistakes. *See generally* Dkt. 21. Petitioner has not shown, however, that any action or inaction on the part of his counsel was objectively unreasonable so as to constitute deficient performance under the first *Strickland* prong. The record contains no evidence supporting an inference that counsel's decisions were anything other than reasonable strategic decisions. *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under

the circumstances, the challenged action might be considered sound trial strategy.").

Petitioner also contends that there was "confusion" in the state post-conviction

court due to the death of the first presiding judge and the assignment of a new judge. *See*

Dkt. 21 at 10. Petitioner alleges post-conviction counsel limited her argument before the

first judge based on a belief that the judge should not stay in the hearing much longer

because of illness. Petitioner also claims that the state court should have started the post-

conviction proceedings "fresh," rather than assigning a new judge to take over the case

after the first judge passed away. *Id*.

No evidence supports Petitioner's allegations, and the Court has found no law,

rule, or principle holding that the death of a judge requires a court to offer to start that

judge's cases all over again, from the beginning. Petitioner's arguments on this issue are

entirely speculative and do not constitute cause to excuse default.

> ### D.     *Petitioner Has Not Established Actual Innocence to Excuse the Procedural Default*

If a petitioner cannot show cause and prejudice for his procedural default, he still

can bring the claim in a federal habeas petition if he demonstrates that failure to consider

the claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477

U.S. at 496. This standard requires proof that a constitutional violation has probably

resulted in the conviction of someone who is actually innocent. *Id.* Actual innocence in

this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage-of-justice exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the constitutional error, *every* reasonable juror would vote to acquit.

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Indeed, cases where the actual innocence gateway standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013). Such evidence may include new DNA evidence, or "a detailed third-party confession," that "undermine[s] the validity of the prosecution's entire case." *Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002); *see House*, 547 U.S. at 540–41. The actual innocence exception is not satisfied by evidence that is merely speculative, collateral, cumulative, or "insufficient to overcome otherwise convincing proof of guilt." *Larsen*, 742 F.3d at 1096.

Petitioner does not make an obvious actual-innocence argument. However, mindful of his pro se status, the Court has considered the entire record and concludes that a reasonable juror could have found Petitioner guilty beyond a reasonable doubt. Thus, Petitioner has not shown he is actually innocent such that his default is excused.

**3.  Although Claim 2(a) Is Cognizable in Habeas Corpus as an Alleged Violation of the Sixth and Fourteenth Amendments, It Appears Procedurally Defaulted Without Legal Excuse**

Respondent asserts that Claim 2(a) is not cognizable because it is based entirely on state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The Court is not persuaded.

Claim 2(a)—that the trial court violated the Confrontation Clause and the right to a fair trial by allowing the prosecutor to impeach Petitioner with an inadmissible pharmacy record for which there was no adequate foundation—plainly invokes federal constitutional rights under the Sixth and Fourteenth Amendments. *See Pet*. at 15. Therefore, the claim is not subject to dismissal for the reason Respondent asserts.

Respondent is correct, however, that the claim raised by Petitioner *in state court* with respect to the pharmacy record was based solely on Idaho law. *See State's Lodging B-2* at 19–22. Petitioner did not base his argument on the federal constitution, as he does with Claim 2(a). Because Claim 2(a) was not fairly presented to the Idaho state courts, it is procedurally defaulted.

However, Respondent did not move for dismissal of Claim 2(a) on procedural default grounds. Therefore, the Court will provide Petitioner with an opportunity to respond to the Court's analysis on this claim.

MEMORANDUM DECISION AND ORDER - 21

## CONCLUSION

Claims 3(a), 3(b), 3(d), 3(e), 3(f), 4, and 5 are procedurally defaulted without legal excuse. Petitioner may respond to the Court's analysis and conclusion that Claim 2(a) is also procedurally defaulted.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion for Partial Summary Dismissal (Dkt. 19) is GRANTED IN PART. Claims 3(a), 3(b), 3(d), 3(e), 3(f), 4, and 5 are DISMISSED with prejudice.

2.    Within 21 days after entry of this Order, Petitioner may file a response to the Court's analysis on the procedural default status of Claim 2(a). The response must be no longer than ten pages. If Petitioner does not file a timely response, or if the response does not alter the Court's analysis, the Court will dismiss Claim 2(a).


DATED: March 29, 2022

Honorable Candy W. Dale
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 22